HEROES, INC., Plaintiff,

v.

HEROES FOUNDATION, The Boomer Esiason Hero's Benevolent Fund, Inc., and Boomer Esiason Hero's Foundation, Defendants.

Civil Action No. 96–1260 (TAF).

United States District Court, District of Columbia.

Dec. 19, 1996.

John Francis Hornick, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., Washington, DC, for Plaintiff.

Marc Eric Miller, Richard Taylor Rossier, McLeod, Watkinson & Miller, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

FLANNERY, Senior District Judge.

The plaintiff, a District of Columbia charitable organization, has sued the defendant,[1] a New York charitable organization, for trademark infringement. Pending before the Court is the defendant's motion to dismiss the plaintiff's amended complaint for lack of personal jurisdiction and improper venue. After considering the arguments and authorities in the briefs filed by the parties and the

---

1. The plaintiff has identified three defendants in its amended complaint. The defendants say the plaintiffs should have sued only one entity, The Boomer Esiason Hero's Benevolent Fund, Inc., because the other two named defendants are not legal entities with the capacity to be sued. This issue, the subject of a separate motion, is not yet resolved. Because it appears that only one entity is being sued here, by whatever name, the Court will refer to the three defendants, all of which join this motion, as "the defendant."

argument of counsel at the December 10, 1996 hearing on this matter, the Court will deny the defendant's motion for the following reasons.

## I. BACKGROUND

Founded in 1964, the plaintiff provides financial assistance to the surviving family members of District of Columbia law enforcement officers and firefighters who are killed in the line of duty. The plaintiff helps the surviving family members pay for funeral expenses, offers them counseling, and provides college scholarships to surviving children.

The plaintiff uses the service mark HEROES in connection with its charitable activities. Its federal trademark registration for the mark HEROES and Design is for "aiding the widows and children of firemen and policemen killed in the line of duty in Washington, D.C., Maryland, and Virginia, in financial, legal, and like causes." The plaintiff's registration, which issued on April 18, 1964, is subsisting and incontestable.

In 1990, the defendant started soliciting funds to support the survivors of police officers and firefighters killed in the line of duty. It adopted the name HEROES FOUNDATION in connection with its charitable activities. The defendant also uses a related logo: a stylized letter H, surrounded by a semicircle of stars, appearing above the word HEROES. In 1993, the defendant started using the HEROES FOUNDATION name and logo to solicit donations for another purpose: to fight cystic fibrosis.

Claiming that the defendant's use of HEROES FOUNDATION and related names is likely to cause potential contributors to be confused, the plaintiff brought this lawsuit, raising state and federal claims of trademark infringement and unfair competition.

## II. DISCUSSION

In the pending motion to dismiss, the defendant argues that this Court lacks personal jurisdiction over it and that venue in the District of Columbia is improper.

### A. *Personal Jurisdiction*

Because the defendant does not reside in the District of Columbia and is not incorporated there, the plaintiff must show that the defendant meets the requirements of the District's "long-arm" statute, and that exercising jurisdiction over it accords with the demands of due process. *See United States v. Ferrara*, 54 F.3d 825, 828 (D.C.Cir.1995). The District's long-arm statute provides that a District of Columbia court may exercise personal jurisdiction over:

a person who acts directly or by an agent as to a claim for relief arising from the person's (1) transacting any business in the District of Columbia; or ...(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C.Code § 13–423(a)(4). As further explained below, the Court finds that it may exercise personal jurisdiction over the defendant under both subsections quoted above.

### 1. *Transacting Any Business*

The "transacting any business" clause of the District's long-arm statute provides jurisdiction to the full extent allowed by the Due Process Clause. Thus, statutory and constitutional jurisdictional questions merge into a single inquiry here. *Ferrara*, 54 F.3d at 828.

A court's jurisdiction over a defendant satisfies the demands of due process when there are "minimum contacts" between the defendant and the forum "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Further, the defendant's "conduct and connection with the forum State must be such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *see also Hanson v. Denckla*, 357 U.S.

235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) (There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.").

To determine if this defendant has purposefully availed itself of the privilege of conducting activities within the District, the Court will consider (1) a newspaper advertisement published in The Washington Post; and (2) the defendant's home page on the Internet, which is accessible to District residents.

### a. *Washington Post Advertisement*

■ On March 3, 1996, an advertisement appearing in the Washington Post invited readers to "Help Donate $100,000 to Boomer Esiason's Heroes Foundation and Find a Cure for Cystic Fibrosis." The advertisement displayed a photograph of Mr. Esiason, who is a quarterback for the Arizona Cardinals football team, and his son, who suffers from cystic fibrosis. Attached to the advertisement, which appeared in an insert in the newspaper's Sunday edition, were coupons for several Proctor & Gamble products. The advertisement explained that Proctor & Gamble will donate up to $100 to the Heroes Foundation for each redeemed coupon. It also stated: "For more information, or to make a donation, please call The Heroes Foundation at 1–800–789–4376."

The defendant argues that this advertisement cannot form the basis of personal jurisdiction because Proctor & Gamble—not the defendant—actually placed the advertisement.[2] In support of that point, the defendant quotes the following sentence from a Supreme Court opinion: "the 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.*" *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987) (emphasis in original).

The Court is not persuaded. The fact that Proctor & Gamble may have paid for the advertisement and also benefitted from it has no constitutional significance. The defendant knew the advertisement was placed, approved of it, and received publicity and substantial contributions as a result of it.[3] Under these circumstances, the placement of the advertisement was indeed a purposeful "action of the defendant" under *Asahi*. See *id.*

Next, the defendant cites a number of cases in which advertisements did not amount to minimum contacts establishing personal jurisdiction under the due process clause. But all of these cases involved advertisements placed in national or international publications which happened to circulate within the forum. *See, e.g., Sears Roebuck & Co. v. Sears*, 744 F.Supp. 1289, 1297 (D.Del. 1990) (advertisements appearing in two international magazines were insufficient basis for establishing personal jurisdiction); *Wines v. Lake Havasu Boat Mfg. Inc.*, 846 F.2d 40, 43 (8th Cir.1988) (advertisement placed in a nationally distributed trade publication circulated in the forum state does not constitute a "purposeful availment of the benefits and protections of [the forum's] law").

Unlike the cited cases, the instant case involves an advertisement placed specifically in the forum's local newspaper, not in a national newspaper or trade publication which happens to circulate there. The distinction is significant. This defendant,

---

2. According to an affidavit of the defendant's president,

> Proctor & Gamble, a major domestic consumer products company, selected the [defendant] as a "cause" selected to participate in what it refers to as its "cause marketing" campaign. In connection with that campaign a selected cause is featured in insert advertising designed, paid for, and distributed by Proctor & Gamble and its agents. As a result, in March 1996, newspaper inserts were distributed in Sunday newspapers across the country (includ-

ing the Washington Post). This insert identified the [defendant] as the beneficiary if consumers used the coupons included as part of the insert.

3. According to the defendant's president, "substantial contributions to the [defendant] were ... generated through consumer's [sic] use of the coupons and the payments made by Proctor & Gamble (and matching contributions by retailers) to the [defendant] based on that coupon use."

through Proctor & Gamble, purposely directed the advertisement at the District, hoping District residents would donate money to it, whether by redeeming coupons or using its toll-free telephone number to make donations directly.[4] And the defendant did indeed benefit from the advertisement, receiving "substantial contributions" as a result of it. *See* footnote 3.

### b. *Home Page*

The Internet is a vast world-wide computer network. Anyone with a personal computer, a telephone modem, and appropriate computer software may gain access to the Internet. Once connected, a user may view "home pages" which provide information about almost anything one can imagine. An Internet user may retrieve the score of a recent Washington Redskins game from the Sports Illustrated home page, listen to excerpts of a popular rap song from the MTV home page, or browse the University of Michigan Law School's course catalogue on-line. Internet users may also order products, participate in surveys, play games, or communicate with the host of a particular home page by e-mail. At least 25 million people have access to the Internet. *See EDIAS Software Int'l v. BASIS Int'l Ltd.*, 947 F.Supp. 413 (D.Ariz.1996).

The defendant maintains an Internet home page which provides information about the organization and its members.[5] At the top of each page appears the defendant's HEROES logo and the name THE BOOMER ESIASON HEROES FOUNDATION. The home page displays a photograph of Mr. Esiason and his son, biographies of some of the defendant's employees, and information about the defendant's find-raising activities. Visitors to the home page are invited to send e-mail messages to the defendant. And the page specifically invites users to make donations to the defendant:

### How Can I Help?

You can help by donating to the Heroes Foundation. For information on how to make a donation, call (800) 789-HERO(4376). No donation is too small, and every donation counts. With your help, we can find a cure to this deadly disease.

The defendant attempts to soft-pedal the significance of its web site. It characterizes home pages as essentially passive, only appearing on a user's screen when a user summons them by means of a "search engine" or "web browser." The defendant also argues that its web page is not really targeted at any particular forum. Indeed, it explains, anyone around the world may, with the proper equipment, gain access to its home page. For these reasons, the defendant insists that it has not purposefully availed itself of the benefits of the District by maintaining a home page on the Internet. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985).

The defendant cites *Bensusan Restaurant Corp. v. King*, a recent decision of the United States District Court for the Southern District of New York, in support of its position. 937 F.Supp. 295 (S.D.N.Y.1996). In that case, a New York jazz club sued a Missouri club for trademark infringement. The New York club argued that a New York court could exercise personal jurisdiction based solely on the Missouri club's home page, which was accessible in New York. The *Bensusan* court disagreed, holding that the existence of the home page, by itself, was not sufficient to justify personal jurisdiction over the Missouri club under a due process analysis. The court explained that "creating a [home page], like placing a product into the stream of commerce, may be felt nationwide—or even worldwide—but, without more, it is not an act purposefully directed toward the forum state." *Id.* at 301.

The United States District Court for the District of Connecticut takes the opposite

---

**4.** To be sure, the advertisement did not appear *only* in the Washington Post. It also appeared in selected newspapers around the country. This fact, however, is not germane to the Court's analysis. By having the advertisement placed in the Washington Post—wherever else it may have been placed—the defendant was targeting its message to District residents specifically.

**5.** The Internet address of the defendant's home page is: http://www.heroes.org/heroes/.

view, concluding that a defendant advertising its products through an Internet home page has purposely availed itself of the privilege of conducting activities in the forum state. *Inset Systems, Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161, 164–65 (D.Conn.1996). That court emphasized the continuing nature of an Internet home page: "unlike hard-copy advertisements ... which are often quickly disposed of and reach a limited number of potential consumers, Internet advertisements are in electronic printed form so that they can be accessed again and again by many more potential consumers." *Id.* at 164; *see also Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328, 1996 U.S. Dist. LEXIS 14978 (E.D.Mo. August 19, 1996) (citing *Inset Systems* with approval, finding contacts related to the defendant's Internet home page to be "of such a quality and nature, albeit a very new quality and nature for personal jurisdiction jurisprudence, that they favor the exercise of personal jurisdiction over defendant").

Because the defendant's home page is not the only contact before the Court, see above, the Court need not decide whether the defendant's home page by itself subjects the defendant to personal jurisdiction in the District. In weighing the importance of this particular contact, however, the Court notes that the defendant's home page explicitly solicits contributions, and provides a toll-free telephone number for that purpose. The home page also contains the defendant's allegedly infringing trademark and logo, the subject of the plaintiffs underlying claims. And the home page is certainly a sustained contact with the District; it has been possible for a District resident to gain access to it at any time since it was first posted.

#### c. *Conclusion*

By soliciting donations on the Internet on a home page which is always available to District residents, and by soliciting donations in the District's local newspaper, the defendant has purposefully availed itself of the privilege of conducting activities within the District, and could reasonably anticipate the possibility of being haled into court there. After considering the relevant factors, the Court finds that the defendant has failed to raise a "compelling case" that the Court's exercise of jurisdiction over it would be un-

reasonable. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528 (1985). Thus, jurisdiction over the defendant is proper under the "transacting any business" clause of the District's long-arm statute.

#### 2. *Causing Injury in the District*

■ Alternatively, the Court may exercise personal jurisdiction over the defendant under section 423(a)(4) of the District's long-arm statute, which extends personal jurisdiction to any person "causing tortious injury in the District of Columbia by any act or omission outside the District." In order to establish jurisdiction under this provision, a defendant must "regularly [do] or [solicit] business, [engage] in any other persistent course of conduct, or [derive] substantial revenue" in the District. The D.C. Circuit calls this provision a "plus factor," explaining that it serves to "filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." *Crane v. Carr*, 814 F.2d 758, 763 (D.C.Cir.1987). In order to demonstrate that the defendant has engaged in "persistent contact" under this provision, the plaintiff need not show any conduct related to the injury-causing act, but must show " 'some other reasonable connection' between the defendant and the forum." *Id.* (citations omitted).

■ In a trademark case, the wrong takes place where confusion is likely to occur. *Sidco Indus. v. Wimar Tahoe Corp.*, 768 F.Supp. 1343, 1346 (D.Or.1991). In the instant case, if there is any confusion, it would be likely to occur in the District, where the advertisement in the Washington Post appeared, and where District residents may gain access to the defendant's home page. As for the "plus factor" which requires "persistent contact" with the District, the Court finds that the defendant's home page, which is always accessible in the District, constitutes a "reasonable connection between the defendant and the forum," *see Crane*, 814 F.2d at 763, and therefore satisfies this requirement.

### B. *Venue*

Because the subject matter jurisdiction of this Court is not based solely on diversity of

**6**

citizenship,[6] venue is proper where any defendant resides, if all defendants reside in the same state. 28 U.S.C. § 1391(b). For purposes of this subsection, a corporation like the defendant[7] resides "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). As explained above, the defendant was subject to personal jurisdiction at the time the action was commenced. Thus, venue is proper in the District.

### III. CONCLUSION

For the foregoing reasons, it is by the Court this 19th day of December 1996 hereby

ORDERED that defendant The Boomer Esiason Hero's Benevolent Fund, Inc's motion to dismiss (7) is denied; and it is

FURTHER ORDERED that the motion to cure misnomer and to dismiss (21) filed by defendants Heroes Foundation and Boomer Esiason Hero's Foundation is denied in part. The Court will decide the remaining motion to cure misnomer when that motion is fully briefed.

---

6. Subject matter jurisdiction is also based on the Lanham Act, 15 U.S.C. § 1053 *et seq.*

7. If the Court later concludes that the non-corporate defendants remain in the case, see footnote 1, the Court may revisit this question to determine if venue is proper with respect to them.