Michael CHANDLER, individually and as next friend of his son, Jesse Chandler, et al., Plaintiffs-Appellees,

v.

Don SIEGELMAN, in his official capacity as Governor of the State of Alabama and President of the State Board of Education, Bill Pryor, in his official capacity as Attorney General of the State of Alabama, Defendants-Appellants.

Nos. 97-6898, 97-6953.

United States Court of Appeals,

Eleventh Circuit.

April 13, 2001.

Appeals from the United States District Court for the Middle District of Alabama (No. 96-00169-CV-D-N), Ira De Ment, Judge.

ON PETITION FOR REHEARING EN BANC

(Opinion October 19, 2000, 11th Cir., 230 F.3d 1313)

Before ANDERSON, Chief Judge, and TJOFLAT, EDMONDSON, BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS and WILSON, Circuit Judges.

ORDER:

The Court having been polled at the request of one of the members of the Court and a majority of the

Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of

Appellate Procedure; Eleventh Circuit Rule 35-5), the Suggestion of Rehearing En Banc is DENIED.

BARKETT, Circuit Judge, dissenting:

I respectfully dissent from the court's denial of rehearing *en banc*. I believe the reinstatement of the

panel decision in this case,[1] ("*Chandler II* ") after remand by the Supreme Court in light of *Santa Fe*

*Independent School District v. Doe,* 530 U.S. 290, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000) ("*Santa Fe* "),

is precluded by the Supreme Court's Establishment Clause precedent, especially *Santa Fe,* and warrants

consideration by the entire court.

This case arose as a result of the fourth attempt by the Alabama legislature to pass a law intended to

facilitate "student prayer" in public classrooms and at school events. *See Chandler v. James,* 958 F.Supp.

---

[1]The Supreme Court granted certiorari in *Chandler v. James,* 180 F.3d 1254 (11th Cir.1999) ("*Chandler I* "), and on June 26, 2000, vacated and remanded this case for further consideration in light of its decision in *Santa Fe.* The present opinion, *Chandler v. Siegelman,* 230 F.3d 1313 (11th Cir.2000) ("*Chandler II* "), is this Court's ruling following the Supreme Court remand.

1550, 1553 (M.D.Ala.1997) (citing Ala.Code § 16-1-20.3(a)-(b) (1995)).[2] The district court found this attempt facially unconstitutional under the Establishment Clause. The district court then issued a permanent injunction prohibiting the school district from permitting student prayer "in situations which are not purely private, such as aloud in the classroom, over the public address system, or as a part of the program at school-related assemblies and sporting events, or at a graduation ceremony." *Chandler I,* 180 F.3d at 1257.

Addressing a situation that is essentially indistinguishable, the Supreme Court in *Santa Fe* concluded that a religious message broadcast over a public address system controlled by the government and conducted on government property at an official school-related event creates the objective perception of religious endorsement in violation of the Establishment Clause and that a school policy "permitting student-led, student-initiated prayer at football games violates the Establishment Clause." 120 S.Ct. at 2275-78 (internal quotations and citation omitted). The opinion of this court reverses the injunction of the district court, and in so doing, permits the very conduct prohibited by the Supreme Court in *Santa Fe.*

The panel opinion suggests that this case, unlike *Santa Fe,* involves issues of private religious speech only and thus the Establishment Clause is not implicated. For support, *Chandler II* relies on *Board of Education of Westside Community Schools v. Mergens* for the principle that there is a difference between government speech endorsing religion, which is forbidden, and private speech endorsing religion, which is protected. *See Chandler II,* 230 F.3d at 1316 (citing 496 U.S. 226, 250, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990)). There is no debate about this basic principle. The question here is whether in fact the conduct at issue constitutes public student prayer prohibited by the Establishment Clause or private prayer protected as free speech, and *Mergens* is inapposite to that question.

In *Mergens,* the Supreme Court held that Free Exercise and Free Speech rights must be protected in the schoolhouse in the context of non-curricular activities as specifically protected by the Equal Access Act. *See* 496 U.S. at 231, 110 S.Ct. 2356 (citing 20 U.S.C. § 4071-4074 (1994) (providing that schools may not deny equal access and use of their facilities for religious non-curricular activities)). This case does not present an equal access issue, and the injunction here specifically follows *Mergens* by providing that religious speech during or relating to non-curricular activities must be allowed by the school district. *See Chandler v. James,* 985 F.Supp. 1062, 1063 (M.D.Ala.1997) ("This PERMANENT INJUNCTION DOES NOT affect

---

[2]The Supreme Court found the prior attempts violative of the Establishment Clause. *See Wallace v. Jaffree,* 466 U.S. 924, 104 S.Ct. 1704, 80 L.Ed.2d 178 (1984); *Wallace v. Jaffree,* 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985).

the rights of secondary-school students to engage in religious activity during noninstructional time that is consistent with the federal Equal Access Act, 20 U.S.C. Section 4071 *et seq.* ...") (emphasis in original).

*Chandler II* also finds that the district court's permanent injunction violated free speech rights because it did not permit "students to speak religiously in any sort of public context." *Chandler II,* 230 F.3d at 1316. The district court, however, took great pains to insure that students *could* express their religious views in public. Specifically, the district court's injunction reads:

> This PERMANENT INJUNCTION DOES NOT
>
> [1] "proscribe the educational use of religious texts in the classroom to the extent that material so used is presented in an objective and academic manner ..."
>
> [2] "proscribe students' voluntary expression of their own religious beliefs in the form of homework, reports, artwork, or other school assignments ..."
>
> [3] "proscribe the display of religious symbols, articles, and medals ... and/or clothing bearing religious messages ..."
>
> [4] "affect the rights of secondary-school students to engage in religious activity during noninstructional time that is consistent with the federal Equal Access Act ..."
>
> [5] "prohibit students from distributing religious materials to classmates during noninstructional time ..."
>
> [6] "proscribe a brief personal expression by a student which contains religious references during a commencement exercise or student address ..."
>
> [7] "prohibit students from making announcements over the school public-address system regarding meetings of noncurricular religious clubs ..."

*Chandler v. James,* 985 F.Supp. at 1063-64 (emphasis in original). Thus, the permanent injunction permitted private prayer in public settings and prohibited public prayer that could be perceived as state endorsed prayer, narrowly tailoring its remedy to balance both Free Speech and Free Exercise rights as well as the Establishment Clause concerns in this case.

The panel decision in *Chandler II,* however, reasons that "if '[n]othing in the Constitution ... prohibits any public school student from voluntarily praying at any time before, during, or after the school day,' then it does not prohibit prayer aloud or in front of others, as in the case of an audience assembled for some other purpose." *Chandler II,* 230 F.3d at 1316-17 (quoting *Santa Fe,* 120 S.Ct. at 2281). This analysis fails to take into account the difference between an individual or a voluntary group of individuals praying privately, albeit in a public setting, on the one hand, and allowing the public delivery of student prayer before "an audience assembled for some other purpose," which includes both students that wish to pray, or pray in a particular manner, and those that do not. *Id.* The district court's injunction in this case carefully drew that distinction.

The panel opinion, in my judgment, erroneously erases it.

Finally, *Chandler II* attempts to distinguish *Santa Fe* by suggesting that state entanglement occurred in *Santa Fe* because the school district instituted a student election process resulting in student prayer whereas no state entanglement occurred here because no student elections were involved. *See Chandler II,* 230 F.3d at 1315. I believe this misreads the rationale of *Santa Fe.* The *Santa Fe* Court made it clear that state entanglement involves "whether an objective observer" would perceive the religious speech as a "state endorsement of prayer in the public schools," and that "[e]very government practice must be judged in its unique circumstances," keeping "in mind the myriad, subtle ways in which Establishment Clause values can be eroded...." 120 S.Ct. at 2278-82 (internal quotations and citations omitted). Using this criteria, *Santa Fe* concludes that the delivery of a voluntary, student-initiated religious message "delivered to a large audience assembled as part of a regularly scheduled, school-sponsored function conducted on school property," and "over the school's public address system, which remains subject to the control of school officials," creates the "actual or perceived [state] endorsement of the message" in violation of the Establishment Clause. *Id.* at 2278. The conduct permitted in this case is no different.

Moreover, consistent with prior Establishment Clause precedent, *Santa Fe* directs courts to consider the effect of a government practice and to inquire whether the practice will tend to impermissibly coerce religious participation. *See* 120 S.Ct. at 2275 (" '[G]overnment may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a [state] religion or religious faith, or tends to do so.' ") (quoting *Lee v. Weisman,* 505 U.S. 577, 587, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992)). A critical aspect of that determination is the historical context of the practice. *See id.* at 2278 ("The text and history of this policy, moreover, reinforce our objective student's perception that the prayer is, in actuality, encouraged by the school."). As was the case in *Santa Fe,* the record here reveals a long-standing history of "unconstitutional efforts" to endorse and encourage student participation in religion. *Chandler I,* 180 F.3d at 1265; *See Chandler II,* 230 F.3d at 1317 n. 5 ("The district court had before it a great deal of information concerning prior actions of school personnel indicating a majoritarian purpose to foster one particular religion."). The injunction vacated by the panel in *Chandler II* was issued to prevent the enforcement of a facially unconstitutional statute enacted by the Alabama legislature to protect and promote student-initiated "prayer, invocation and/or benedictions" during "school-related student assemblies,"

"sporting events," and "graduation or commencement ceremonies."[3]  As the panel opinion concedes, the record supports a history of coercive participation by the school district in this case.  Accordingly, Establishment Clause principles are necessarily implicated.  For all the foregoing reasons, I suggest that the reversal of the district court's injunction in this case contravenes the Establishment Clause and warrants *en banc* review.

---

[3]The relevant portion of the stricken statute reads:  "(b) On public school, other public, or other property, non-sectarian, non-proselytizing student-initiated voluntary prayer, invocation and/or benedictions, shall be permitted during compulsory or non-compulsory school-related student assemblies, school-related student sporting events, school-related graduation or commencement ceremonies, and other school-related student events."  Ala.Code § 16-1-20.3(b) (1995).