# United States Court of Appeals for the Federal Circuit

04-1293

TRINTEC INDUSTRIES, INC.,
and TIME TO INVENT, LLC,

Plaintiffs-Appellants,

v.

PEDRE PROMOTIONAL PRODUCTS, INC.,

Defendant-Appellee.

Robert A. Vanderhye, Nixon & Vanderhye, P.C., of Arlington, Virginia, argued for plaintiffs-appellants.

Robert S. Churchill, Eaton & Van Winkle LLP, of New York, New York argued for defendant-appellee. With him on the brief was Robert L.Vogel, Vogel & Slade, of Washington, DC.

Appealed from: United States District Court for the District of Columbia

Judge Royce C. Lamberth

# United States Court of Appeals for the Federal Circuit

04-1293

TRINTEC INDUSTRIES, INC.
and TIME TO INVENT, LLC,

Plaintiffs-Appellants,

v.

PEDRE PROMOTIONAL PRODUCTS, INC.,

Defendant-Appellee.

_____

DECIDED:  January 19, 2005

_____

Before RADER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and BRYSON, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This appeal challenges the district court's dismissal of a patent suit for lack of personal jurisdiction over the defendant.  Trintec Indus., Inc. v. Pedre Promotional Prods. Inc., No. 1:03-CV-01267-RCL (D.D.C. Mar. 25, 2004) (order granting motion to dismiss) ("Dismissal Order").  We vacate and remand for the district court to reconsider in accordance with our opinion.

I

The appellants, Trintec Industries, Inc., a Canadian corporation, and Time To Invent, a District of Columbia corporation (collectively "Trintec"), sued the appellee, Pedre Promotional Products, Inc. ("Pedre"), for patent infringement in the United States

District Court for the District of Columbia. The complaint alleged that Pedre infringed two of Trintec's patents, which cover automated small volume production of printed faces for use in wristwatches, clocks and similar instruments. The complaint further alleged that Pedre is a New York corporation with its main office in New York City, and that the district court had venue because Pedre "is a corporation that resides in this judicial district." Compl., June 12, 2003 at ¶¶ 3, 5.

Pedre moved to dismiss "for lack of personal jurisdiction and improper venue, or, in the alternative, [to] transfer[] . . . this case to the Southern District of New York pursuant to 28 U.S.C. § 1404." Motion to Dismiss, July 16, 2003 at 1. Attached to the motion was a declaration of Anthony Farello, the president of Pedre. Declaration of Anthony Farello, July 15, 2003 ("Farello Decl.") at ¶ 1. Farello stated that Pedre, a New York corporation, has its "sole office and place of business" in New York City. Its business is "manufacturing and importing watches and clocks." Its "manufacturing facilities are in New York," but some of its parts "are sourced out to a manufacturing facility in Rhode Island." It "has no offices, employees, manufacturing facilities or sales representatives in Washington, D.C." Farello Decl. at ¶¶ 3-5.

Farello further stated that "Pedre sells watches and clocks to distributors throughout the United States, who then sell the products to the ultimate user." It "does not directly employ sales representatives" but instead "contract[s] to a sales organization called Multiline Marketing Group, Inc. ('Multiline')" based in Florida. "Multiline is the sales representative for eight product lines including Pedre"; the other seven product lines are from manufacturers with "no connection to Pedre." "Joy Jacobs is the Multiline sales representative whose sales territory includes Washington, D.C." as

well as several other nearby states. Although she has never "maintained an office or established an ongoing presence" in the District of Columbia, she "spends approximately four to five days per year visiting clients in Washington, D.C. on behalf of Pedre and the seven other manufacturers whose product lines she represents; these days are spread over two visits annually." Id. at ¶¶ 6-11.

Regarding sales and advertising, Farello stated that "[s]ales to distributors in Washington, D.C. are a minimal part of Pedre's total business. The number of active accounts in the past four years in Washington, D.C. is 17 (only four have been active in the past two years), a minor fraction of the 5,720 active accounts Pedre has opened nationwide during the same period. Many of the distributors do not renew their orders of promotional products from year to year. . . . Sales to Washington, D.C. distributors accounted for $2,749 in all of 2002 and for $4,176 through the end of June, 2003. By contrast, total annual nationwide sales for Pedre are approximately $3.5 million. . . . Pedre advertises exclusively in national trade publications and makes no efforts at advertising or promotion in the Washington, D.C. market." Id. at ¶¶ 12-14.

In response, Trintec filed a declaration of Robert A. Vanderhye, its lead counsel and the general manager of the plaintiff Time To Invent. Declaration of Robert A. Vanderhye, July 23, 2003 ("Vanderhye Decl.") at ¶ 1. Vanderhye stated that searches he made on the Internet relating to Pedre products "reveal that Pedre products, including products alleged to infringe the patents in suit, are extensively advertised on a number of web sites to customers and potential customers in Washington, D.C. including on 'pedre.com,' Pedre's own web site. . . . There are literally dozens of other

web sites . . . which also depict and tout Pedre products.  Some of these web sites have hyperlinks to pedre.com."  Vanderhye Decl. at ¶ 4.

Vanderhye stated that "Pedre offers infringing products, and products produced by infringing methods, for sale in Washington, D.C., over its own personal web site, as well as over other web sites", and that he "was able to directly place orders for the infringing products in Exhibit A over between [two to four different] Pedre sponsored or authorized interactive web sites.  While I did not actually complete and submit the orders because of the cost involved, all I had to do to actually submit the orders was to fill out name and billing and shipping address information[,] which had a place for 'State' and did not exclude Washington, D.C.[,] provide payment information, and submit (e.g. by e-mail) the multicolor art work to be used on the dials."  Id. at ¶¶ 5-6.

Vanderhye further stated that additional interactive features on Pedre's website "invite[] customers in Washington, D.C. to create a 'CyberWatch$^{TM}$' over the Internet, allowing creation and approval of a final watch design through interaction with the customer over Pedre's web site," and to "e-mail art to Pedre's art department at the advertised e-mail address 'art@pedre.com'.  Over the Internet, Pedre also invites customers in Washington, D.C. to call it at its toll free number 1-800-969-2151 to place orders, and allows promotional products companies to customize e-flyers on the Internet for their own purposes, order samples, or contact suppliers by clicking on hyperlinks."  Id. at ¶ 9.

Finally, Vanderhye stated that "Pedre advertises on its web site that it 'exhibits at national and regional shows across the country,' including two that it says were sited in Washington, D.C. in 2003 (January 30 and July 8). . . . Pedre states, both on its

pedre.com web site and on the Multiline Marketing Group web site, that an indication of its success with color custom watch dial sales is that it has made watch sales to the US Postal Service. The USPS is known to be headquartered in Washington, D.C." Id. at ¶¶ 7-8. Attached to Vanderhye's declaration as exhibits were copies of the material he obtained from the Internet. Appellant's Br. App. at A37-43.

The district court granted Pedre's motion and dismissed the complaint. The sole explanation it gave for that action was the following order:

> Defendant having moved pursuant to Fed. R. Civ. P. 12(b)(2) and (3) to dismiss the complaint for lack of personal jurisdiction and improper venue or, in the alternative, to transfer this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404; and the Court having considered the submissions of the parties, it is hereby:
> ORDERED, that Defendant's Motion to Dismiss the Complaint be, and it hereby is GRANTED, and the Clerk is hereby directed to dismiss the complaint.
> SO ORDERED.

Dismissal Order at 1.

II

A. The determination whether a district court has personal jurisdiction over the defendants in a patent infringement case generally involves two inquiries. First, does jurisdiction exist under the state long-arm statute? See, e.g., Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1200 (Fed. Cir. 2003); Deprenyl Animal Health, Inc. v. U. of Toronto Innovations, 297 F.3d 1343, 1349-50 (Fed. Cir. 2002); Hildebrand v. Steck Mfg. Co., 279 F.3d 1351, 1354 (Fed. Cir. 2002); Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001). Second, if such jurisdiction exists, would its exercise be consistent with the limitations of the due process clause? See, e.g., Silent Drive, 326 F.3d at 1201; Inamed, 249 F.3d at 1359-60.

Sometimes these two inquiries coalesce into one because the reach of the state long-arm statute is the same as the limits of the due process clause, so that the state limitation "collapses into" the due process requirement. Inamed, 249 F.3d at 1360 (noting that California long-arm statute is coextensive with limits of due process); see also Deprenyl, 297 F.3d at 1350 (same, discussing Kansas long-arm statute); HollyAnne Corp. v. TFT, Inc., 199 F.3d 1304, 1307 (Fed. Cir. 1999) (same, discussing Nebraska long-arm statute). Here, Trintec and Pedre appear to disagree upon whether the limitations of the District of Columbia's long-arm statute are the same as those of the due process clause.

There are two kinds of personal jurisdiction – specific and general. "Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if those contacts are 'isolated and sporadic.' . . . General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." LSI Indus. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985), and Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984)). The District of Columbia permits courts to exercise general jurisdiction over a foreign corporation for claims that do not arise from the corporation's conduct within the District, if the corporation is "doing business" in the District and its business contacts are "continuous and systematic." Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 509-10 (D.C. Cir. 2002) (internal citations omitted); see D.C. Code § 13-334(a) (2004) (governing service of process on foreign corporations in the District). The reach of general jurisdiction in the District of Columbia under section 13-334(a) is

"coextensive with the reach of constitutional due process." Gorman, 293 F.3d at 510

(citing Hughes v. A.H. Robins Co., 490 A.2d 1140, 1148 (D.C. 1985)).

B. Specific personal jurisdiction depends upon the District of Columbia long-arm

statute, the relevant sections of which provide that:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's –
>
> > (1) transacting any business in the District of Columbia;
> > . . .
> > (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> >
> > (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
> > . . .

D.C. Code § 13-423(a) (2004).

Unfortunately, we cannot tell from the district court's brief order the grounds or

factual basis upon which that court might have concluded that the long-arm statute did

not authorize jurisdiction, or whether its decision rested upon that provision or due

process requirements. All the district court stated was that Pedre had moved to dismiss

"for lack of personal jurisdiction and improper venue" and that the court had "considered

the submissions of the parties." Dismissal Order at 1. We are left totally in the dark

about the reason for the district court's action.

Two preliminary issues may be quickly dispatched. First, although Pedre moved

to dismiss for lack of personal jurisdiction and improper venue, the venue point is a non-

issue. Venue in a patent action against a corporate defendant exists wherever there is personal jurisdiction. VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1583 (Fed. Cir. 1990); see also HollyAnne, 199 F.3d at 1306. Therefore, no separate venue inquiry is necessary.

Second, in patent litigation the injury occurs at the place where "the infringing activity directly impacts on the interests of the patentee," which includes "the place of the infringing sales[.]" Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1571 (Fed. Cir. 1994). Thus, if an infringing product is sold in the District of Columbia, that sale causes "tortious injury" there under subsection (a)(3) or (a)(4) of the District of Columbia long-arm statute, patent infringement being a tort. D.C. Code § 13-423(a)(4); see Beverly Hills Fan, 21 F.3d at 1569-71; cf. Heroes, Inc. v. Heroes Found., 958 F. Supp. 1, 5 (D.D.C. 1996) (finding jurisdiction under subsection (a)(4) in trademark infringement action, where "tortious injury" was likelihood of confusion occurring in the District).

C. To establish specific personal jurisdiction under the District long-arm statute, Trintec would have to demonstrate either (1) that its claims arose from Pedre's transacting business in the District of Columbia (subsection (a)(1)), see Heroes, 958 F. Supp. at 2-5; or (2) that Pedre caused it tortious injury in the District by its conduct in the District (subsection (a)(3)); or (3) that Pedre caused it tortious injury in the District by its conduct outside the District and that Pedre "regularly does or solicits business" in the District, "engages in any other persistent course of conduct" there, or "derives substantial revenue" from goods used or services rendered there (subsection (a)(4)), see Heroes, 958 F. Supp. at 5-6.

The evidence in the record upon which Trintec relies to establish personal jurisdiction involves two interrelated aspects of Pedre's contacts with the District of Columbia: attempts to sell its products there (including advertising them), and actual sales there.

Trintec relies heavily on Pedre's use of its own interactive website to advertise its products, which Trintec alleges customers in the District of Columbia can use to purchase those products from Pedre. The difficulty is that Pedre's website is not directed at customers in the District of Columbia, but instead is available to all customers throughout the country who have access to the Internet. Thus, "the ability of District residents to access the defendants' websites . . . does not by itself show any persistent course of conduct by the defendants in the District." GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1349 (D.C. Cir. 2000); see also Gorman, 293 F.3d 512 & n.5 (discussing the lack of specific jurisdiction in GTE and similar cases involving "essentially passive" websites).

Some cases have suggested that the availability and use of a highly interactive, transaction-oriented website (as opposed to an "essentially passive" website) by itself may support long-arm jurisdiction wherever the site is available to potential customers for the purpose of doing business. See, e.g., Gorman, 293 F.3d at 510-13 (discussing general personal jurisdiction based on interactive financial brokerage website); Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1125-26 (W.D. Pa. 1997) (asserting personal jurisdiction under Pennsylvania's long-arm statute based on subscription news service website). Although Trintec has shown that Pedre's websites contain some interactive features aimed at transacting business, it is unclear how

frequently those features are utilized or, indeed, whether any District residents have ever actually used Pedre's website to transact business.

Other cases have indicated that something additional beyond a website is required to establish personal jurisdiction. Compare GTE, 199 F.3d at 1346 (holding that personal jurisdiction could not be based upon "mere accessibility to an Internet site in the District" where defendants had "no other contacts with the District of Columbia"), with Heroes, 958 F. Supp. at 5 ("Because the defendant's home page is not the only contact before the Court . . . the Court need not decide whether the defendant's home page by itself subjects the defendant to personal jurisdiction in the District."). We need not decide that question here, however, since Trintec does not rely solely on Pedre's website as the basis for jurisdiction. Unfortunately, the additional facts upon which Trintec relies are also too ambiguous to permit us to make an informed judgment on the jurisdictional issue.

Trintec refers to the availability of Pedre products on non-Pedre websites, but those sites would support jurisdiction only if Pedre had some responsibility for the third party's advertising of Pedre products on non-Pedre sites. See, e.g., Jung v. Ass'n of Am. Med. Colls., 300 F. Supp. 2d 119, 132 n.5 (D.D.C. 2004) (distinguishing cases where personal jurisdiction is based upon defendant's activities on its own website from situation where third party's website was used); GTE, 199 F.3d at 1352 (indicating the importance of "know[ing] for certain which defendants own and operate which websites" in determining jurisdiction). Although some of the non-Pedre websites contain hyperlinks to Pedre.com, it is unclear exactly how much, if any, control Pedre has over the contents of these third-party sites.

04-1293                                        10

Trintec also states that Pedre advertises on its website that it "exhibits at national and regional shows across the country," including two in the District of Columbia in 2003. This evidence does not explain, however, how Pedre so exhibits. Does Pedre have a booth at the show, and if so, is it manned by a company representative? Does it negotiate sales at the show, or take orders there? This, and perhaps other, additional information is required before the significance of Pedre's participation in the trade shows can be properly evaluated.

There is evidence that Joy Jacobs, a sales representative employed by Multiline, makes two annual visits to Washington, D.C., where she spends four to five days a year visiting clients of the eight manufacturers, including Pedre, that Multiline represents. We do not know, however, exactly what she does on those visits, or how much time she spends with Pedre's clients. Trintec also alleges that "Pedre offers infringing products, and products produced by infringing methods, for sale in Washington, D.C., over its own personal web site, as well as over other web sites." We do not know if those offers resulted in any actual sales to forum residents.

Regarding actual sales in the District, the record shows that Pedre had seventeen active accounts in Washington, D.C. from 1999 to 2003, but that only four of these were active in 2002 and 2003; and that Pedre's "sales to Washington, D.C. distributors" were $2,749 in 2002 and $4,176 in the first six months of 2003 – compared to Pedre's annual national sales of approximately $3.5 million. We do not know whether these sales were of infringing products, and cannot state whether such sales, representing approximately one-tenth of one percent of Pedre's total sales, are sufficiently substantial to support personal jurisdiction in the District of Columbia.

Finally, Trintec points out that Pedre states on its website that it has "made watch sales" to the United States Postal Service, which is "known to be headquartered in Washington, D.C." This statement, however, does not establish that those watch sales were made in the District of Columbia. The statement would be equally accurate if the sales were made to the Postal Service in New York City. Furthermore, it does not state that the watches sold to the Postal Service were infringing products.

In short, on the record before us we are unable to determine whether, under the District of Columbia long-arm statute, Pedre is transacting business in the District of Columbia. Nor can we ascertain whether Pedre is causing others injury in the District by its conduct outside the District while regularly doing or soliciting business, engaging in any persistent course of conduct, or deriving substantial revenue from goods used or consumed in the District. We are thus unable to determine whether specific personal jurisdiction exists over Pedre.

D. Based on this record, we are also unable to determine whether Pedre had continuous and systematic contacts with the District sufficient to give rise to general personal jurisdiction under D.C. Code § 13-334(a), which provides for jurisdiction over corporations doing business in the District even if the claim at issue does not arise from a corporation's conduct in the District.

E. Because there has not been discovery on the jurisdictional issue, Trintec is required "only to make a prima facie showing" of jurisdiction to defeat the motion to dismiss. Silent Drive, 326 F.3d at 1201 (quoting Deprenyl, 297 F.3d at 1347). In evaluating this showing, the district court must construe all pleadings and affidavits in the light most favorable to the plaintiff. Id.; see also Graphic Controls Corp. v. Utah

Med. Prods., Inc., 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998). Although the record suggests that Trintec made a prima facie showing of personal jurisdiction in the district court, that evidence is sparse and contains gaps sufficient to cause us to conclude that additional evidence is needed before a decision on jurisdiction properly can be made. We shall, therefore, vacate the judgment of the district court and remand the case to that court for further proceedings.

If the district court concludes that the existing record is insufficient to support personal jurisdiction, Trintec is entitled to jurisdictional discovery. Such discovery is appropriate where the existing record is "inadequate" to support personal jurisdiction and "a party demonstrates that it can supplement its jurisdictional allegations through discovery." GTE, 199 F.3d at 1351-52 (plaintiff entitled to discovery in part to determine "which defendants own and operate which websites"); see Crane v. Carr, 814 F.2d 758, 760 (D.C. Cir. 1987).

Accordingly, on remand the district court should take all necessary action, including whatever discovery appears appropriate, to ensure that the record is adequate to determine whether it has personal jurisdiction over Pedre. Once the record is complete, the district court will be able to make an informed judgment on the issue. We assume that in making that decision, the district court will set forth the facts upon which it relies and explain its legal reasoning.

If the court rules that it has personal jurisdiction under the District of Columbia long-arm or service of process statute, it will then have to address whether such jurisdiction would be consistent with due process under this circuit's standards enunciated in Akro Corp. v. Luker, 45 F.3d 1541, 1545 (Fed. Cir. 1994), cited in Silent

<u>Drive</u>, 326 F.3d at 1201, and <u>Inamed</u>, 249 F.3d at 1360.  We express no opinion on whether these statutory and constitutional requirements would be met in this case.

If the court should hold that it has jurisdiction, it will then have to consider Pedre's alternative motion to transfer the case to the United States District Court for the Southern District of New York.

## CONCLUSION

The order of the district court dismissing the complaint for lack of personal jurisdiction is vacated, and the case is remanded to that court for further proceedings in accord with this opinion.

<u>VACATED AND REMANDED</u>