# United States Court of Appeals for the Federal Circuit

2007-1163

MEDICAL SOLUTIONS, INC.,

Plaintiff-Appellant,

v.

C CHANGE SURGICAL LLC,

Defendant-Appellee.

John P. Moran, Holland & Knight LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief were James H. Laughlin, Jr. and Rafael E. Alfonzo, III.

Tonya R. Deem, Kilpatrick Stockton LLP, of Winston-Salem, North Carolina, argued for defendant-appellee. With her on the brief were J. Steven Gardner and Jon R. Pierce.

Appealed from: United States District Court for the District of Columbia

Judge Paul L. Friedman

# United States Court of Appeals for the Federal Circuit

2007-1163

MEDICAL SOLUTIONS, INC.,

Plaintiff-Appellant,

v.

C CHANGE SURGICAL LLC,

Defendant-Appellee.

Appeal from the United States District Court for the District of Columbia in case no. 06-CV-01261, Judge Paul Friedman.

———————————————

DECIDED:  September 9, 2008

———————————————

Before BRYSON, PROST, <u>Circuit Judges</u>, and ZAGEL,[*] <u>District Judge</u>.

ZAGEL, <u>District Judge</u>.

Medical Solutions, Inc. ("MSI") appeals from a final judgment of the United States District Court for the District of Columbia dismissing MSI's patent suit for lack of personal jurisdiction over C Change Surgical LLC ("CCS").  <u>Medical Solutions, Inc. v. C Change Surgical LLC</u>, 468 F. Supp. 2d 130 (D.D.C. Dec. 29, 2006).  Because CCS's demonstration of the allegedly infringing device at a trade show did not constitute a "use" under the patent laws, and because the district court did not abuse its discretion in denying MSI further jurisdictional discovery, we affirm.

———————————————

[*]     Honorable James B. Zagel, District Judge, United States District Court for the Northern District of Illinois, sitting by designation.

## I.     BACKGROUND

MSI is a Virginia corporation that develops, manufactures, and distributes medical technology for controlled heating and temperature maintenance of medical fluids and related equipment.  MSI has obtained several patents to protect its technology related to devices that control the temperature of medical and surgical fluids in the operating room.  CCS is a North Carolina Limited Liability Company with its only place of business in Winston Salem, North Carolina.  CCS develops and commercializes technologies that improve operating room efficiency and patient safety. To date, the only technology that has been developed by CCS is IntraTemp, a mobile workspace that controls the temperature of surgical fluids.  According to MSI, IntraTemp infringes two of MSI's patents, of which CCS had notice.

CCS moved to dismiss MSI's complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  MSI asserted that personal jurisdiction existed in the District of Columbia because CCS promoted, showed, and used the allegedly infringing IntraTemp product at an industry trade show hosted by the Association of periOperative Registered Nurses ("AORN"), which was held in Washington, D.C. between March 19 and March 23, 2006.  CCS was one of approximately 600 exhibitors at the AORN trade show.  CCS had its own booth, which displayed a "large and visible" sign advertising the allegedly infringing product.  CCS representatives working at the booth discussed the IntraTemp product with potential customers and showed how parts of the device functioned.  Brochures describing IntraTemp were available.  MSI alleged, without dispute, that CCS later placed the

IntraTemp product in two hospitals – one in Maryland, and the other in Georgia - as a direct result of its marketing at the trade show.

CCS responded that it is not registered to do business in the District of Columbia, nor does it have sales agents, employees, offices, manufacturing facilities, bank accounts, or telephone listings there. It owns or controls nothing of value in the District nor does it manufacture, use or sell any products in the District. CCS neither directs marketing efforts at the District nor generates any revenue from there. CCS's website is accessible from the District of Columbia; however the website includes no interactive features and is not specifically targeted to residents of the District. CCS explained that the hospital in Georgia contacted CCS through its website two months after the trade show, and the hospital in Maryland learned about the IntraTemp product via second-hand information from a trade show attendee. The units placed in the Georgia hospital were for clinical evaluation, and CCS did not charge the hospital for the use of those units. CCS insisted that all negotiations leading up to the placement of the IntraTemp units in the hospitals in Georgia and Maryland took place outside the District of Columbia. CCS maintained that it made no sales, negotiated no sales, took no orders, and provided no price information to attendees of the trade show in Washington, D.C.

MSI argued that personal jurisdiction over CCS was proper under the District of Columbia's long-arm statute because CCS both "used" and "offered to sell" the allegedly infringing product at the trade show, each course of conduct constituting the tort of patent infringement. See 35 U.S.C. § 271(a); D.C. Code § 13-423(a)(3) (2008).

The district court rejected the argument that CCS "used" MSI's patented invention when CCS displayed and demonstrated its IntraTemp product at the trade

show.  Medical Solutions, 468 F. Supp. 2d at 133-34.  The district court similarly rejected MSI's argument that CCS "offered to sell" the allegedly infringing IntraTemp product at the trade show.  Id. at 134-35.  Applying traditional contract principles, the district court reasoned that in order to constitute an "offer to sell," such an offer must include price terms.  Id.  Because the price for CCS's IntraTemp product was not made available to attendees of the AORN trade show, there could not have been an offer to sell the allegedly infringing product for purposes of 35 U.S.C. § 271(a).[1]  Id. at 135.

Lastly, the district court denied MSI's request for jurisdictional discovery because MSI failed to show that additional discovery would be beneficial to its establishment of personal jurisdiction.  Id. at 135-36.

This appeal followed.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II.    DISCUSSION

Whether or not a district court has personal jurisdiction over a party is a question of law that this court reviews de novo.  HollyAnne Corp. v. TFT, Inc., 199 F.3d 1304, 1307 (Fed. Cir. 1999).  A district court has personal jurisdiction over the defendant in a patent infringement case if two things are true.  First, jurisdiction must exist under the forum state's long-arm statute.  Trintec Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1279 (Fed. Cir. 2005).  Second, the assertion of personal jurisdiction must be consistent with the limitations of the due process clause.  Id.  The law of the forum (here the District of Columbia) governs the first inquiry; Federal law controls the second.  3d Sys., Inc. v. Aarotech Labs, Inc., 160 F.3d 1373, 1377 (Fed. Cir. 1998).

---

[1]    Because the district court found that MSI failed to make a prima facie showing of personal jurisdiction under the District of Columbia's long-arm statute, it did not consider whether exercising personal jurisdiction over CCS would comport with the requirements of due process.

2007-1163                          4

Under the District of Columbia's long-arm statute, personal jurisdiction is proper over a non-resident defendant for "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia." D.C. Code § 13-423(a)(3). The U.S. Patent Act states that the tort of patent infringement occurs when a party "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor." 35 U.S.C. § 271(a).

Absent discovery on the issue of personal jurisdiction, MSI was required "only to make a prima facie showing" of jurisdiction to defeat CCS's motion to dismiss. Trintec, 395 F.3d at 1282.

In the district court, MSI argued that CCS's activities constituted both an "offer to sell" and a "use" under § 271(a). On appeal, MSI abandons its "offer to sell" argument and advances only its "use" argument. Specifically, MSI contends that the district court failed to consider the totality of the circumstances when it determined that CCS's activities at the trade show did not amount to a "use" under the U.S. Patent Act. Appellant's Br. at 8.

MSI relies on Trintec for the proposition that the district court should have applied the totality of the circumstances test to determine whether CCS's activities at the trade show constituted a "use" under § 271(a). Appellant's Br. at 17-18. This reliance is misplaced. First, the issue in Trintec was whether there might have been an "offer to sell" in the District of Columbia as opposed to a "use"; indeed, the evidence in the record on which Trintec relied to establish personal jurisdiction involved attempts to sell

products in the District of Columbia and actual sales there.[2] Trintec, 395 F.3d at 1281. Second, we remanded in Trintec because the record relating to the defendant's business transactions in the District of Columbia was incomplete and because we could not tell from the district court's brief order the grounds or factual basis upon which that court concluded that the long-arm statute did not authorize jurisdiction. Id. at 1280, 1282. In sum, Trintec was a case about the "offer to sell" prong of § 271(a), which required us to remand to the district court because the record included very little information about defendant's sales activity in the forum. Citing Trintec to argue for a more expansive inquiry into the facts here under the "use" prong is unavailing.

Several courts addressing whether a defendant has "used" a patented invention have held that "the mere demonstration or display of an accused product, even in an obviously commercial atmosphere" is not an act of infringement for purposes of § 271(a). Fluid Mgmt. Ltd. P'ship v. H.E.R.O. Indus., Ltd., No. 95-5604, 1997 WL 112839, at *4 (N.D. Ill. Mar. 11, 1997) (quoting Intermedics, Inc. v. Ventritex, Inc., 775 F. Supp. 1269, 1286 (N.D. Cal. 1991) (concluding that absent concurrent sales-oriented activity which results in, or at least substantially advances, an actual sale, the demonstration of an accused product at a scientific trade show does not constitute an infringing "use")); see also Brennan v. Mr. Hanger, Inc., 479 F. Supp. 1215, 1231

---

[2] The only mention of a trade show in Trintec was Trintec's statement that the defendant in that case advertised on its website that it exhibited products at national and regional shows across the country, including two in the District of Columbia. Brief of Plaintiff-Appellant at 5, Trintec Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275 (Fed. Cir. 2005) (No. 04-1293). However, no information about those shows was provided, and Trintec did not argue that the defendant's activities at those shows constituted a "use" under § 271(a). Trintec mentioned the defendant's trade show exhibitions as evidence of the defendant's purposeful establishment of minimum contacts with the District of Columbia, not as evidence of "use" in the District of Columbia. Id. at 17-18.

(S.D.N.Y. 1979) (noting that the mere display of the infringing hanger bars would not constitute an infringing "use").[3]

The inquiry as to what constitutes a "use" of a patented item is highly case-specific, Van Well Nursery, Inc. v. Mony Life Ins. Co., 362 F. Supp. 2d 1223, 1229 (E.D. Wash. 2005).  We find that the district court correctly considered and interpreted all of the facts with regard to CCS's "use" of the allegedly infringing IntraTemp product at the trade show.  In Gerber Garment Technology, Inc. v. Lectra Systems, Inc., 699 F. Supp. 1576, 1580-81 (N.D. Ga. 1988), the court found that the plaintiff established a prima facie case for the exercise of personal jurisdiction where the defendant demonstrated the allegedly infringing knife-cutting machines at a trade show, but the defendant in that case also purposefully engaged in other activities related to the litigation in that forum. Here, MSI asserts nothing other than CCS's activities, which appear to fall short of practicing all of the elements of any one claim, at the trade show as evidence to confer personal jurisdiction over CCS.

The ordinary meaning of "use" is "to put into action or service."  NTP, Inc. v. Research In Motion, Ltd., 418 F.3d 1282, 1317 (Fed. Cir. 2005) (quoting Webster's Third New International Dictionary 2523 (1993)).  MSI's patented technology pertains to systems for warming and controlling the temperature of medical and surgical items.  At the trade show, CCS displayed a prototype of its product, staffed its booth with representatives, and made available brochures about the product.  But none of these

---

[3]     A demonstration of an accused device plus the simultaneous solicitation of purchase orders has been held to amount to a sufficient degree of "selling" activity.  See U.S. Envtl. Prods., Inc. v. Infilco Degremont, Inc., 611 F. Supp. 371 (N.D. Ill. 1985). However, that holding is inapposite here since MSI hangs its hat on the "uses" rather than the "sells" prong of § 271(a).

activities was putting the IntraTemp device into service. MSI claims that "[t]he infringing InterTemp [sic] warmer was not just passively shown or displayed; CCS staffed its booth with several sales representatives, who actively demonstrated the IntraTemp's actual functions in use." The portion of the joint appendix cited in support of this claim, however, does not indicate whether the IntraTemp device was used to heat medical items at the trade show. The closest evidence that MSI points to on appeal in support of its claim that CCS "actively demonstrated" IntraTemp at the trade show appears to be the declaration of Mr. Cordell stating that the CCS representative showed at least one attendee how to take the basin off the device when the basin still had fluid in it. Even if we accept as true that a CCS representative took a basin off an accused device during a trade show, that alone would not establish that the accused device was put into service so as to constitute an infringing use. Much more would be needed to qualify as an infringing use, including that the device was used to heat medical items at the show. In this case we need not (and do not) decide whether the demonstration of a product at a trade show could ever be sufficient to establish an infringing use.[4] We simply conclude that the facts as alleged in this case do not establish a prima facie case. For these reasons, we agree with the district court's conclusion that CCS's display and

---

[4] That said, we do recognize other courts have held that demonstrations of a device are not proper evidence of "use" because using a device means using it to perform its actual function or service, not using it as a demonstrative display. See Union Asbestos & Rubber Co. v. Evans Prods. Co., 328 F.2d 949, 951 (7th Cir. 1964); Advanced Semiconductor Materials Am., Inc. v. Applied Materials, Inc., No. 93-20853, 1995 WL 419747, at *6 (N.D. Cal. July 10, 1995) (holding that a demonstration "hardly qualifies as using the patented process for its intended purposes").

demonstration of IntraTemp at the trade show did not constitute a "use" of the allegedly infringing product.[5]

Finally, the district court did not abuse its discretion when it denied MSI the opportunity to conduct jurisdictional discovery. See Mwani v. bin Laden, 417 F.3d 1, 17 (D.C. Cir. 2005). When we "do not see what facts additional discovery could produce that would affect our jurisdictional analysis," we must "conclude the district court did not abuse its discretion in dismissing the action when it did." Id. (quoting Goodman Holdings v. Rafidain Bank, 26 F.3d 1143, 1147 (D.C. Cir. 1994)). MSI's arguments for discovery are concerned primarily with seeking additional information about placements or sales of CCS's IntraTemp product. While that information might have been relevant to whether or not CCS "offered to sell" its product at the trade show, on appeal MSI has abandoned its "offer to sell" argument as a basis to establish personal jurisdiction. Because placement and sales information is not relevant to whether CCS's display or demonstration at the trade show constituted an infringing "use," further jurisdictional discovery along those lines would be unhelpful. Nor is there anything in the complaint or MSI's response to the motion to dismiss that make out a prima facie showing of jurisdiction sufficient to require that MSI be permitted to conduct jurisdictional discovery. See Trintec, 395 F.3d at 1283.

While we can conceive of situations where CCS's conduct would constitute a "use" under the statute, such a situation would involve, at a minimum, practicing all of the elements of at least one claim. The declaration MSI provided gave no hint of such

---

[5]    Because MSI fails to make a prima facie case of personal jurisdiction under the District of Columbia's long-arm statute, we too do not reach the issue of whether the exercise of personal jurisdiction over CCS in the District of Columbia comports with the requirements of due process.

an appropriate set-up, so the decision to deny discovery based upon that declaration was a judgment call the district court was entitled to make.

III.    CONCLUSION

For the aforementioned reasons, we affirm.

AFFIRMED.